WUNSCH et al. v. NORTHERN PAC. R. CO.

(Circuit Court, N. D. California. May 14, 1894.)

No. 10,985.

CARRIERS—LOSS OF PASSENGER'S EFFECTS — MERCHANDISE CARRIED BY TRAVELING SALESMAN.

A trunk containing a stock of jewelry was received by an agent of a railway company, without knowledge as to its contents, from a traveling salesman having a ticket over the railroad, and was checked as baggage to his destination and placed in a baggage car. The train was derailed, the car took fire, and the trunk and part of its contents were destroyed or lost. The salesman delivered the jewelry saved to the conductor of the train, telling the conductor where he was going. After his arrival there he presented his check to the company's baggage-master and demanded his baggage, not explaining that it had been destroyed, nor asking for the goods saved; and a subsequent tender by the company of such goods on identification was refused, unless their acceptance should be without prejudice to a claim against the company for damages. *Held* that, as the original delivery to the company was a deception upon it, and the trunk and its contents did not become baggage thereby, there was no conversion of the rescued articles by their nondelivery on the demand made; the only duty imposed on the company with respect to them being to keep them safely and deliver them on demand and identification to their owner.

This was an action by M. Wunsch & Company against the Northern Pacific Railroad Company for the loss of certain goods delivered to defendant for transportation.

E. W. McGraw, for plaintiffs.

Joseph D. Redding and Horace G. Platt, for defendant.

McKENNA, Circuit Judge (orally). The facts of this case are as follows: One Eisenbach, a traveling salesman for M. Wunsch & Co., the plaintiffs, took passage at Spokane for Missoula, Mont., he having a ticket over defendant's road. He checked his trunk for that town, paying for extra weight, and received a receipt for the latter, and the ordinary baggage check for the trunk. The trunk was received by the agent of the company, and put in the baggage car. It contained about $20,000 worth of jewelry of various kinds, the property of plaintiffs. There is no evidence that the agent of the company knew its contents. On the morning of the next day the train was derailed, near a place called "Noxon," and the baggage car took fire. Mr. Eisenbach testified that he got the trunk out, but the heat drove him away, "and the fire got to the trunk, and it burst open," and its contents were scattered. Part of them only were saved, and these were put in a box obtained from the newsboy. This was taken to Noxon, and there transferred to a train sent from a place called "Hope," and from thence transported to Missoula, and, by direction of the then superintendent, turned over

to W. H. Low, the general baggage agent, and taken to St. Paul. The conductor further testified that there was no check on the original trunk (presumably it had been burned off), and that he had no means of knowing to whom it belonged, and that, when it was turned over to the general baggage agent, there was nothing to indicate to whom it belonged. Mr. Eisenbach testified that, at the time he handed the saved goods over to the conductor, he told him that he (Eisenbach) was going to Missoula. The conductor, however, testifies, to quote him, "that he paid no attention to it at all at that time; that he had other business to attend to,—had to see that the injured got back to the sleepers." The train arrived at Missoula at night. On the next·day Eisenbach made a demand on Mr. Case, the baggage master, for his baggage, presenting his receipt and check; and he repeated the demand on the next day and other days afterwards. His demand, however, was for his baggage, meaning, as he said, the trunk as originally delivered at Spokane. He testifies that he would not have received the said box of jewelry. To this demand the baggage master replied that the trunk was not there, and Eisenbach says that he did not explain that it had been destroyed. On the 21st and 22d of April the plaintiffs sent to defendant the following claim and letters:

"San Francisco, Cal., April 22, 1890.

"Northern Pacific Railroad Co. (Claim Department), St. Paul, Minn.—Gentlemen: You will please find inclosed a claim and demand of M. Wunsch & Co., of this city, for $21,674, for value of contents of commercial traveler's trunk committed to your care on March 24th, 1890, and for $200, value of the trunk, which said trunk and contents were lost and converted by you. The contents of the trunk were insured by the Anglo-Nevada Assurance Corporation and the California Insurance Company in the sum of $20,000. The inventory attached to the claim is that of the contents of the trunk as it was checked at Spokane Falls, all previous sales having been deducted from the original contents at San Francisco. The matter is one which merits your prompt and serious attention, and I shall expect to hear from you at a very early day. Please address your reply to me.

"Yours truly, E. W. McGraw,

"Attorney for M. Wunsch & Co. and for Anglo-Nevada Assurance Corporation and California Insurance Company."

"San Francisco, Cal., April 21, 1890.

"Northern Pacific Railroad Company (Claim Department), St. Paul, Minn.—Gentlemen: On the twenty-fourth day of March, 1890, our traveling salesman, Mr. I. P. Eisenbach, took the midnight passenger train of the Northern Pacific Railroad at Spokane Falls, Washington, bound for Missoula, Montana. Previous to the departure of the train at midnight of above date, he had his commercial traveler's trunk checked at Spokane Falls for Missoula. The trunk was weighed, and a charge was made by the forwarding agent at Spokane Falls for excess baggage, which charge was paid by Mr. Eisenbach, who thereupon received a paper excess-baggage check, the face of which reads as follows:

" 'Northern Pacific Railroad Company. Local Excess-Baggage Check.

" 'Spokane Falls, W. Station, 3–24, 1890.

" 'This check calls for the following described baggage, viz.: 1 T, bearing local excess-baggage strap check No. 0251, on which excess charges have been collected. Missoula station. No. of tickets held by passenger: One. Prepaid trunk No. ——. Form No. ——. Issued by —— R. R. E. J. Bunce, Forwarding Agent. B. 8856.'

"Mr. Eisenbach, upon his arrival at Missoula, presented the paper check above copied and the strap check 0251 to the baggage master of the Northern Pacific Railroad, and demanded the trunk to which they entitled him. The demand was not complied with, nor the trunk delivered. The trunk which was checked was a commercial traveler's trunk, easily recognizable as such by its size, shape, and construction. It, with its contents, was our property. We are informed by Mr. Eisenbach that the trunk was destroyed by fire while in possession of the N. P. R. R. Co. on the morning of March 25th, between the stations Heron and Noxon; that such of the contents as could be recovered were packed in another trunk, and taken possession of by E. C. Crandall, conductor of the train on which the fire occurred. Mr. Eisenbach saw the last-mentioned trunk on the railroad platform at Noxon as he passed through that place on his way to Missoula, on the evening of March 25th. Mr. Eisenbach was informed by the baggage master at Missoula that said last-named trunk had been forwarded 'to the general baggage agent of the N. P. R. R. Co. at St. Paul, Such forwarding was without the knowledge or consent of Mr. Eisenbach. Notwithstanding his demand for the trunk and his exhibition of the checks therefor, he has received no further information from the company concerning the same than is above detailed. The contents of the trunk checked were of the value of twenty-one thousand six hundred and seventy-four dollars and fifty-six cents ($21,674.56), which sum we hereby demand of the Northern Pacific Railroad Company. A detailed inventory of the contents of said trunk, and the value thereof, is hereto appended. The trunk checked, with its leather and other telescopes and watch and jewelry trays and rolls and other fittings, cost us over $200. The trunk was about six months old. We also demand of the N. P. R. R. Co. the sum of $200, the value of that trunk.

"Yours truly, M. Wunsch & Co."

Plaintiff sent this claim to the company, specifying Eisenbach's trunk, and claiming the value of trunk and jewelry to be $21,674.56. To these the defendant replied on the 28th of April, denying liability, and stating if—

"Any portion of your client's property was saved and placed for safe-keeping in the custody of our general baggage agent, by communicating with him, and proving ownership, the same will, of course, be returned to its rightful owner."

Considerable correspondence by telegraph ensued, in which the defendant urged the plaintiffs to meet its agent in regard to the property in Montana, and in which plaintiffs expressed a willingness to do so if without expense to them, and without waiving any rights. In the correspondence the liability for the trunk and contents as originally delivered was insisted on by plaintiffs. Finally, Mr. Wunsch's expenses being paid by defendant, he met its agent, Mr. Ford, at Helena. There the agent told him, if he could identify the jewelry saved at Noxon, he was ready to tender it to him. Wunsch replied:

"I am not disposed to receive the goods until I communicate with my counsel and the insurance company."

He telegraphed to the insurance company, and received the following reply, which he showed the agent Ford:

"San Francisco, Cal., June 19th, 1890.

"M. Wunsch, Helena, Mont.: Tell Ford you will take goods, and give him receipt as follows, and not otherwise: 'Received from the Northern Pacific Railroad Co. the following goods, saved from fire near Noxon, occurring March 25th, 1890. [Here insert inventory.] We received said goods without prejudice to any action or right of action against Northern Pacific Railroad Co.

We agree to sell said goods at auction in San Francisco, and credit the net proceeds on any judgment we may recover against said Railroad Co. If we recover no judgment, proceeds to be ours. We accept said goods only on condition that said acceptance shall not be pleaded or considered in any action now pending or which we may hereafter bring against Railroad Co.' To be signed by M. Wunsch & Co.; Railroad Co. to sign below as follows: 'The Northern Pacific Railroad Company delivers the above-mentioned goods, and accepts the above conditions which they are received by M. Wunsch & Co.' To be signed: 'D. K. Ford, General Claim Agent, Northern Pacific Railroad Co.' If Ford consents, give receipt as above, with his consent indorsed as above in duplicate.

"[Signed] Anglo-Nevada Assurance Corporation."

To this the agent answered that he could not recognize "any such document as that," and read to him or showed to him the kind of receipt he would sign, which was as follows:

"Received of the Northern Pacific Railroad Company the following described watches and other articles of jewelry, picked up by different persons near Noxon, Montana, at a point where a train of the said Northern Pacific Railroad Company was wrecked on the 25th day of March, A. D. 1890; said watches and articles of jewelry being part of the contents of a certain trunk checked by I. P. Eisenbach, an employe of the undersigned, on or about March 24, 1890, from Spokane Falls, Washington, to Missoula, Montana; said watches and articles of jewelry being the same described as follows in the inventory furnished by us to said Northern Pacific Railroad Company, in a claim made by us for the contents of said trunk against said Northern Pacific Company, to wit: * * *."

On the 20th, Wunsch sent Ford the following:

"Helena, Mont., June 20th, 1890.

"D. K. Ford, Esq., City—Dear Sir: My firm declines to accept goods except on terms of receipt communicated to you yesterday. The Northern Pacific R. R. Company has already converted the goods, and we decline to receive them in a damaged condition, except without prejudice to our claim against the company. I will, if you desire it, go over the inventory of such goods as you have, inspect the goods, and check such as I can identify, provided I can have a copy of the inventory.

"Yours respety., M. Wunsch."

Afterwards Ford again tendered the goods, and Wunsch refused them, saying: "No; my letter is final." Wunsch was told that the goods would always be ready to be delivered to him whenever he made up his mind to accept them. The goods were put back in the trunk, and shipped again to St. Paul, and there kept until they were forwarded here. They were produced in court, and submitted to the order of the plaintiffs. There was also evidence of the value of the goods and the payment of the insurance on the entire lot of jewelry to plaintiffs.

It is evident that under the decision of the supreme court of the United States in Humphreys v. Perry, 148 U. S. 627, 13 Sup. Ct. 711, the plaintiff's trunk and contents did not become baggage by its delivery by Eisenbach to the company's agent at Spokane. This is conceded by plaintiffs, but it is contended that there was a conversion by the defendant of the rescued articles by their nondelivery at Missoula on the demand of Eisenbach. To sustain this contention, plaintiffs cite a number of cases. There are various illustrations of the doctrine stated, in one of them (Rider v. Edgar, 54 Cal. 127) as follows:

v.62F.no.10—56

"To maintain trover or trespass de bonis asportatis, evidence of an actual forcible dispossession of the plaintiff is not necessary. Any unlawful interference with the property, or exercise of dominion over it, by which the owner is damnified, is sufficient to maintain either action."

In the case at bar there was no unlawful interference with plaintiffs' property or exercise of dominion over it. The original delivery of the jewelry to defendant was a deception upon it (Humphreys v. Perry, supra), and gave no rights to the trunk and its contents as baggage. The first relations of defendant to them with which we are concerned accrued at Noxon, at the time of the wreck. What duty did these relations impose on the defendant? We may assume, to keep the goods safely, and to deliver them upon demand and identification to their owner. A discharge of this duty was tendered to plaintiffs, and refused by them.

But it is claimed by plaintiffs that the goods were delivered to the conductor of the train by Eisenbach, he then saying that he was going to Missoula, and that this created a duty to deliver them at Missoula. If they had been baggage, properly accompanying a passenger whose destination was Missoula, this might be true; but they were not. They were goods brought to the attention and forced upon the care of the defendant by an accident. They were of considerable value, and the true relations of the company to them were not known. But Eisenbach did not demand them at Missoula. They were on the same train as he was, and arrived at Missoula at the same time he did. If he had immediately sought and claimed them as such, a different question might have been presented. But his demand next day was not for them, but for the trunk and its contents as delivered at Spokane. Indeed, it is evident that, when he turned them over to the conductor, it was not for the purpose of claiming and receiving them again, for he testifies that he would not have accepted them if they had been offered. The testimony shows that to the first claim which identified them the company promptly responded, and subsequently tendered them, and that the plaintiffs refused to accept them except upon such terms as they had no right to exact. Judgment for defendant.