### HOHL v. NORDDEUTSCHER LLOYD.

(Circuit Court of Appeals, Second Circuit. January 11, 1910.)

No. 105.

SHIPPING (§ 141*)—LIABILITY FOR LOSS OF GOODS—LIMITATIONS OF AMOUNT IN BILL OF LADING—VALIDITY.

It is competent for a steamship company as a carrier of goods to limit its liability in case of loss, even as against its own negligence, by a provision in the bills of lading that it is "not accountable for any sum exceeding $100 per package for goods of whatever description, * * * unless the value of such be herein expressed and freight as may be agreed paid thereon," where such valuation is the basis on which freight is charged and was fully known to the shipper.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 493, 495; Dec. Dig. § 141.*

Limitation of liability of vessel owner, see note to The Longfellow, 45 C. C. A. 387.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Sebald M. Hohl against the Norddeutscher Lloyd. Decree for libelant, and respondent appeals. Reversed.

For opinion below, see 169 Fed. 990.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, in favor of libelant for damages resulting from the failure of respondent to deliver to libelant a case of hosiery, being one of ten cases shipped by libelant's agents, Louis Delius & Co., of Bremen, by steamship Kaiser Wilhelm der Grosse under bill of lading and consigned to Goldman, Sachs & Co., New York. The opinion of the District Court will be found in 169 Fed. 990. It follows an earlier opinion of the same court, which was not appealed, in U. S. Lace Curtain Mills v. Oceanic Steam Navigation Company, 145 Fed. 701.

Joseph Larocque and Choate & Larocque, for appellant.
William Harison and Kneeland & Harison, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

LACOMBE, Circuit Judge. It is not disputed that the particular case was lost through some negligence of the carrier's employés, and the defense advanced is partial only; it being insisted that by reason of the provisions of the bill of lading the damages should have been limited to $100 which amount respondent tendered in settlement of the claim. The provision of the bill of lading relied upon is as follows:

"Not accountable for any sum exceeding $100 per package for goods of whatever description, nor for any amount in respect of gold, silver, bullion, specie, jewelry, precious stones or metals, paintings, statuary, or any other valuable goods of whatever description, unless the value of such be herein expressed and freight as may be agreed paid thereon."

The libelant contends that this clause, so far as it relates to the limitation to $100 per package, is invalid in case of loss by negligence of respondent. The question thus presented as to the right of a common carrier to avail of such a clause in a bill of lading when the loss has occurred through its negligence is one which has been frequently before the courts and has been discussed in many opinions which are by no means harmonious. It will not be necessary to review these decisions, nor to discuss the subject at length, because, on the facts in this case, the principles laid down by the Supreme Court indicate the conclusion which should be reached in a federal court.

The general rule that a carrier cannot by any stipulation or agreement with a shipper relieve itself from the obligation to respond in full damages for any loss resulting from its negligence was qualified in Hart v. Penn. R. R., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717. In that case plaintiff sought to recover nearly $20,000 for the death of one and injuries to four other valuable race horses and to some other property. Defendant admitted liability to the amount of $1,200 —stock and contents in one car—but insisted that no more could be recovered by reason of the terms of the bill of lading, which plaintiff had signed. That document receipted for five horses—

"for transportation, upon the following terms and conditions, which are admitted and accepted by me [the shipper] as just and reasonable: First. To pay all freight thereon to said company at the rate of ninety-four cents for 100 lbs. weight * * * on the condition that the carrier assumes a liability on the stock to the extent of the following valuation: If horses or mules, not exceeding $200 each. If cattle or cows, not exceeding $75 each. If fat hogs or fat calves, not exceeding $15 each. If sheep, lambs, stock, hogs, or stock calves, not exceeding $5 each. If a chartered car, on the stock and contents in same $1,200 for the car load."

The trial court charged the jury that:

"It is competent for a shipper, by entering into a written contract, to stipulate the value of his property and to limit the amount of his recovery in case it is lost. This is the plain agreement, that the recovery shall not exceed the sum of $200 each for the horses, or $1,200 for a car load."

The verdict was for $1,200—the car load limitation. In affirming the judgment the Supreme Court said:

"It must be presumed from the terms of the bill of lading, and without any evidence on the subject, and especially in the absence of any evidence to the contrary, that, as the rate of freight expressed is stated to be on the condition that the defendant assumes a liability to the extent of the agreed valuation named, the rate of freight is graduated by the valuation. * * * The

presumption is conclusive that, if the liability had been assumed on a valuation as great as that now alleged, a higher rate of freight would have been charged. The rate of freight is indissolubly bound up with the valuation. If the rate of freight named was the only one offered by the defendant, it was because it was a rate measured by the valuation expressed. If the valuation was fixed at that expressed, when the real value was larger, it was because the rate of freight named was measured by the low valuation.  *  *  *  It is further contended by the plaintiff that the defendant was forbidden, by public policy, to fix a limit for its liability for a loss by negligence at an amount less than the actual loss by such negligence. As a minor propositon, a distinction is sought to be drawn between a case where the shipper, on requirement, states the value of the property and a rate of freight is fixed accordingly, and the present case. It is said that, while in the former case the shipper may be confined to the value he so fixed, in the event of loss by negligence, the same rule does not apply to a case where the valuation inserted in the contract is not a valuation previously named by the shipper. [In the Hart Case the valuation of $200 per horse and $1,200 per car load had not been named by the shipper. They were inserted by the carrier in its live stock bills of lading, arbitrarily so far as the record shows.] But we see no reason for this distinction. The valuation named was the 'agreed valuation,' the one on which the minds of the parties met, however it came to be fixed, and the rate of freight was based on that valuation and was fixed on condition that such was the valuation and that the liability should go to that extent and no further."

The court discusses many authorities, stating that the decisions in this country are at variance. It decides that it is just to hold the shipper to his agreement, fairly made, as to value, even where the loss or injury has occurred through the negligence of the carrier; that the limitation as to value has no tendency to exempt from liability for negligence; that it does not induce want of care, but exacts from the carrier the measure of care due to the value agreed on, and the carrier is bound to respond in that value for negligence.

"The compensation for carriage," says the court, "is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy.  *  *  *  A contract of the kind, signed by the shipper [and] fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier,  *  *  *  will be upheld as  *  *  *  proper and lawful."

This case, Hart v. Pennsylvania, has been frequently referred to in subsequent decisions; but our attention has been called to none in which the Supreme Court has in any way modified the conclusions therein expressed. Libelant cites Calderon v. Atlas Steamship Co., 170 U. S. 273, 18 Sup. Ct. 588, 42 L. Ed. 1033. In that case the clause in the bill of lading read as follows:

"It is also mutually agreed that the carrier shall not be liable for gold, silver,  *  *  *  or for goods of any description which are above the value of $100 per package, unless bills of lading are signed therefor, with the value therein expressed, and a special agreement is made."

It was held by a majority of this court that this clause should be construed as requiring the carrier to pay up to the limit ($100 per package) when no value was expressed, under the rule that a document

of this sort, susceptible of two constructions when prepared by one party, should be construed in favor of the other party. But the Supreme Court held that the language was not susceptible of two constructions, that there was no ambiguity about it, and that it provided that, where the goods were over the value stated and there was no prior declaration of value, with special agreement, the carrier should pay nothing in case of loss. Such a provision was manifestly void, but in so holding the Supreme Court did not at all qualify its earlier decision in Hart v. Pennsylvania R. R. Indeed, it reaffirmed it, stating that in the Hart Case and in other decisions, which it cited, it was held—

"to be competent for carriers of passengers or goods, by specific regulations brought distinctly to the notice of the passenger or shipper, to agree upon the valuation of the property carried, with a rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, and that such contracts will be upheld as a lawful means of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives," etc.

The provision in the bill of lading in the case at bar is very different. The carrier assumed liability for the amount named upon agreement to pay the freight specified, and accords to the shipper the right to have his goods carried and accounted for at their full value, provided he will state that value in advance and agree to pay freight at a rate proportionate thereto. Such an agreement is fair and reasonable, because it enables the carrier to ascertain in advance what risk of loss he runs in undertaking the transportation, so that, if he chooses to do so, he can protect himself by effecting a sufficient amount of insurance and also by exercising greater care in handling the more valuable packages.

It is sought to distinguish the case at bar from the Hart Case on the theory that there has been no agreed valuation, but the amount has been fixed arbitrarily by the carrier without reference to the real value. But in the Hart Case the amount, per horse and per car load, was fixed arbitrarily by the carrier in its general form of live stock bill of lading. The shipper in that case signed the bill of lading, but that circumstance merely made it easier to prove that he was fully informed as to its terms. Here there can be no claim of ignorance, or of failure to observe obscure notices, because the printed form itself was the one generally used by libelant's agents, their firm name was printed on its face, and, as the District Judge found, "they were not imposed upon by a contract with which they were unfamiliar." In the Hart Case the court said:

"The plaintiff did not, in the course of the trial, or by any requests to instruct the jury, or by any exception to the charge, raise the point that he did not fully understand the terms of the bill of lading, or that he was induced to sign it by any fraud or under any misapprehension. On the contrary, he offered and read in evidence the bill of lading, as evidence of the contract on which he sued."

We have the same situation here. The only difference is the absence of plaintiff's signature from the bill of lading. But in the quotation supra from the Calderon Case it is indicated that agreements as to valuation may be effected by "specific regulations brought distinctly

to the notice of * * * the shipper"; and in Cau v. Texas & Pacific Railway Co., 194 U. S. 431, 24 Sup. Ct. 663, 48 L. Ed. 1053, it is held that:

"* * * The carrier may modify his responsibility by agreement with a shipper. A bill of lading limiting liability constitutes such contract and knowledge of its contents by the shipper will be presumed."

Reference may also be had to the decision of this court in Bachman v. Clyde Steamship Co., 152 Fed. 405, 81 C. C. A. 529.

The decree is reversed, with costs, and cause remanded, with instructions to enter a decree in conformity with this opinion.