## GEORGE N. PIERCE CO. v. WELLS FARGO & CO.

(Circuit Court of Appeals, Second Circuit. May 18, 1911.)

**1.** CARRIERS (§ 150*)—LIMITATION OF LIABILITY—VALIDITY OF LIMITATION.

A provision of a bill of lading exempting the carrier from all liability for loss or damage to the property shipped, unless proved to have been caused by its fraud or the "gross negligence" of itself or its servants, is not contrary to public policy; there being no distinction between gross negligence and ordinary negligence under the decisions of the federal courts.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 654–659; Dec. Dig. § 150.*]

**2.** CARRIERS (§§ 155, 158*)—LIMITATION OF AMOUNT OF LIABILITY.

A common carrier may by a contract fairly entered into with a shipper limit the amount of its liability for negligence, and the validity of such a contract is not affected by the fact that the carrier uses printed bills of lading, which fix an arbitrary value for all packages, having no relation to their real value, beyond which it is not to be liable unless a greater value is stated by the shipper and more freight paid, where the facts are fully understood by the shipper who declines to place a valuation on the property, and assents to the limitation in consideration of a reduced rate.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 663–718; Dec. Dig. §§ 155, 158.*]

**3.** CARRIERS (§ 27*)—INTERSTATE COMMERCE ACT—FALSE BILLING.

The fixing of the value of property in a bill of lading at less than its actual value for the purpose of limiting the amount of the carrier's liability in case of loss is not a false billing in violation of Interstate Commerce Act Feb. 4, 1887, c. 104, § 10, 24 Stat. 382, as amended by Act March 2, 1889, c. 382, § 2, 25 Stat. 857 (U. S. Comp. St. 1901, p. 3160).

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 27.*]

**4.** NEGLIGENCE (§ 1*)—DEFINITION.

Negligence is the failure to exercise the care appropriate to the circumstances of the particular case.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4743–4763; vol. 8, pp. 7729–7731.]

Noyes, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of New York.

Action at law by the George N. Pierce Company against Wells Fargo & Co. Judgment for plaintiff, from which it brings error. Affirmed.

William B. Hoyt (A. L. Becker and Hoyt & Spratt, of counsel), for plaintiff in error.

Alexander & Green (W. C. Prime and W. W. Lancaster, of counsel), for defendant in error.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The plaintiff, a manufacturer, brought this action at law to recover of the defendant, an express company, the

---

value of a car load of automobiles and appurtenances which it had delivered to the defendant to be carried from Buffalo to San Francisco. The defendant admitted its liability, and the trial judge directed the jury to find a verdict in favor of the plaintiff for $50, the agreed value of the shipment, with interest and costs. The plaintiff took out this writ of error to the judgment entered on the verdict on the ground that the jury should have been directed to find a verdict for the actual value of the shipment, which was over the sum of $15,000.

The bill of lading under which the goods were carried provided:

" * * * Nor shall said company be liable for any loss of or damage to said property in any event or for any cause whatever unless said loss or damage shall be proved to have been caused by or to have resulted from the fraud or gross negligence of said company or its servants; nor in any event shall said company be held liable beyond the sum of fifty dollars, at not exceeding which sum the said property is hereby valued, unless a different value is hereinabove stated. * * * "

The goods were fully described in writing with the additional statement, "Value asked and not declared." The plaintiff had large experience in shipping its product both by railroad companies and by express companies. It was entirely familiar with shipping receipts and bills of lading and had books containing the forms of various companies, including the defendant. It had been in the habit of putting valuations upon its express shipments, but changed its practice before the shipment in question was made. Its shipping clerk read the bill of lading for this shipment, was asked by the defendant's agent whether he wished to put a valuation on the goods, and declined to do so. He knew that, if he did so, the amount of freight payable would be increased. The plaintiff's representative on the Pacific coast had got the rate for this particular shipment, and had advised the plaintiff what it would be.

Thus the agreement was deliberately made with full knowledge of all the facts. The parties dealt with each other on perfectly fair, open, and even terms. Although the valuation was obviously much below the real value, the plaintiff thereby got the benefit of paying less freight and the defendant the benefit of limiting, not its liability, but the amount of its liability for negligence.

[1, 4] There is nothing against public policy in the first clause above quoted. The federal courts recognize no difference between gross and ordinary negligence. Railway Co. v. Arms, 91 U. S. 489, 23 L. Ed. 374. In all cases negligence is failure to exercise the care appropriate to the circumstances of the particular case. Greater care is called for in transporting eggs than in transporting pig iron. Therefore the clause, though it exempts the defendant from its liability as insurer, which is lawful, does not exempt it from the consequences of its own fraud or negligence, which would be unlawful as against public policy. It remained liable for its negligence to the full amount agreed upon. Such a contract is valid in the federal courts.

[2] The Supreme Court has definitely so decided in Hart v. Pennsylvania Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717. In that case 12 race horses were valued at $200 each, one of which was worth $15,000 and the others from $3,000 to $3,500 each. Mr. Justice Blatchford said:

"Although the horses, being race horses, may, aside from the bill of lading, have been of greater real value than that specified in it, whatever passed between the parties before the bill of lading was signed was merged in the valuation it fixed; and it is not asserted that the plaintiff named any value, greater or less, otherwise than as he assented to the values named in the bill of lading by signing it. The presumption is conclusive that, if the liability had been assumed on a valuation as great as that now alleged, a higher rate of freight would have been charged. The rate of freight is indissolubly bound up with the valuation. If the rate of freight named was the only one offered by the defendant, it was because it was a rate measured by the valuation expressed. If the valuation was fixed at that expressed, when the real value was larger, it was because the rate of freight named was measured by the low valuation. The plaintiff cannot claim a higher valuation on the agreed rate of freight.

"It is further contended by the plaintiff that the defendant was forbidden by public policy to fix a limit for its liability for a loss by negligence at an amount less than the actual loss by such negligence. As a minor proposition, a distinction is sought to be drawn between a case where a shipper, on requirement, states the value of the property, and a rate of freight is fixed accordingly, and the present case. It is said that, while in the former case the shipper may be confined to the value he so fixed, in the event of a loss by negligence, the same rule does not apply to a case where the valuation inserted in the contract is not a valuation previously named by the shipper. But we see no sound reason for this distinction. The valuation named was the 'agreed valuation,' the one on which minds of the parties met, however it came to be fixed, and the rate of freight was based on that valuation, and was fixed on condition that such was the valuation, and that the liability should go to that extent and no further. * * *

"The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practised on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with the public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss. * * *

"The plaintiff did not, in the course of the trial, or by any request to instruct the jury, or by any exception to the charge, raise the point that he did not fully understand the terms of the bill of lading, or that he was induced to sign it by any fraud or under any misapprehension. On the contrary, he offered and read in evidence the bill of lading, as evidence of the contract on which he sued.

"The distinct ground of our decision in the case at bar is that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations. Squire v. New York Central R. R. Co., 98 Mass. 239, 245 [93 Am. Dec. 162], and cases there cited."

There can be no objection to a carrier's using printed bills of lading which fix a value for all packages unless a greater value is stated by the shipper and more freight paid. If it could not do this, a negotia-

tion and a chaffering would be necessary as to the value of each article tendered for shipment whose freight depended at all upon value, before the document could be delivered. A satisfactory or profitable transaction of business would be impossible. In the present case, however, as in the Hart Case, the shipper gave his positive assent.

The plaintiff in error relies upon Calderon v. Atlas Co., 170 U. S. 272, 18 Sup. Ct. 588, 42 L. Ed. 1033, and The Kensington, 183 U. S. 263, 22 Sup. Ct. 102, 46 L. Ed. 190. They are not applicable. In the Calderon Case the bill of lading, as construed by the Supreme Court, exempted the carrier from any liability whatever for packages over the value of $100 each. Mr. Justice Brown recognized the right of the carrier to limit his liability:

"Acting upon this view, it was held that the liability of the respondent was limited to $100 per package, following in this particular the rulings of this court in Railroad Company v. Fraloff, 100 U. S. 24, 27 [25 L. Ed. 531], and Hart v. Pennsylvania Railroad, 112 U. S. 331 [5 Sup. Ct. 151, 28 L. Ed. 717], and the principle announced in Magnin v. Dinsmore, 56 N. Y. 168; s. c., 62 N. Y. 35 [20 Am. Rep. 442]; s. c., 70 N. Y. 410 [26 Am. Rep. 608], Wescott v. Fargo, 61 N. Y. 542 [19 Am. Rep. 300], and Graves v. Lake Shore & Mich. Southern Railroad, 137 Mass. 33 [50 Am. Rep. 282]. In this last case the rule obtaining in this court is adopted to its full extent by the Supreme Judicial Court of Massachusetts. In these cases it was held to be competent for carriers of passengers or goods, by specific regulations brought distinctly to the notice of the passenger or shipper, to agree upon the valuation of the property carried, with a rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, and that such contracts will be upheld as a lawful method of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations. See, also, Ballou v. Earle, 17 R. I. 441 [22 Atl. 1113, 14 L. R. A. 433, 33 Am. St. Rep. 881]; Richmond & Danville Railroad v. Payne, 86 Va. 481 [10 S. E. 749, 6 L. R. A. 849]; J. J. Douglas Company v. Minnesota Transportation Co., 62 Minn. 288 [64 N. W. 899, 30 L. R. A. 860]."

But he went on to say that the contract properly construed relieved the carrier of any liability whatever, which was, of course, void:

"In this case the contract is one prepared by the respondent itself for the general purposes of its business. With every opportunity for a choice of language, it used a form of expression which clearly indicated a desire to exempt itself altogether from liability for goods exceeding $100 in value per package, and it has no right to complain if the courts hold it to have intended what it so plainly expressed. If the language had been ambiguous, we might have given it the construction contended for, which probably conforms more nearly to the clause ordinarily inserted in such cases, but such language is too clear to admit of a doubt of the real meaning."

In the Kensington Case the limitation was held invalid because the alternative offered to the passenger of a higher valuation for a higher freight was that she should ship her baggage under a bill of lading. This would have brought it within the Harter act (Act Feb. 3, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), which relieves the carrier from any liability for errors of navigation or management by its servants and so was unfair. The words with which Mr. Justice White concluded his opinion show that the court did not intend to depart from its ruling in the Hart Case, supra:

"In view of the nature and duration of the voyage, of the circumstances which may be reasonably deemed to environ transatlantic cabin passengers, and the objects and purposes which it may also be justly assumed the persons who undertake such a voyage have in view, we think the arbitrary limitation of 250 francs to each passenger, unaccompanied by any right to increase the amount by an adequate and reasonable proportional payment, was void. It is therefore unnecessary to decide whether the ticket delivered and received, under circumstances disclosed by the record, gave rise to a contract embracing the exception to the carrier's liability, which were stated on the ticket. We intimate no opinion on the subject."

[3] It is also suggested that the fixing of a value lower than the real value is in violation of section 10 of the interstate commerce act of February 4, 1887 (chapter 104, 24 Stat. 382), as amended (Act March 2, 1889, c. 382, § 2, 25 Stat. 857 [U. S. Comp. St. 1901, p. 3160]), but, being the same for all shippers, there can hardly be said to be any discrimination.

This court is definitely committed to the proposition that a common carrier may by contract limit the amount of his liability for his negligence. Bachman v. Clyde Steamship Co., 152 Fed. 403, 81 C. C. A. 529; Hohl v. Norddeutscher Lloyd, 175 Fed. 544, 99 C. C. A. 166. And we think it would be in the highest degree violative of public policy to permit a shipper who has pecuniarily benefited by the valuation he has deliberately agreed upon to repudiate his agreement and recover against the carrier on a higher valuation. The judgment is affirmed.

NOYES, Circuit Judge (dissenting). In upholding the right to contract many courts have gone so far as to rule that a common carrier may even stipulate for exemption from responsibility for its own negligence. But the Supreme Court of the United States has never accepted this view. In a series of decisions beginning with the great case of Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627, it has consistently held that any contract which excuses a common carrier from negligence in the performance of its duty is contrary to public policy and void.

The principles of public policy involved are broad. The law as administered by the federal courts will not permit a common carrier to abandon its obligations to the public. Still it has been contended that, while these considerations would forbid a carrier from altogether relieving itself from liability, they should not prevent it from exempting itself if it offer the shipper the alternative of paying a greater rate and obtaining full liability. But the Supreme Court of the United States in Calderon v. Atlas Steamship Co., 170 U. S. 272, 282, 18 Sup. Ct. 588, 592, 42 L. Ed. 1033, after saying that contracts for exemption from all responsibility have been repeatedly held by it invalid as attempts to put off the essential duties resting upon carriers, said:

"The difficulty is not removed by the fact that the carrier may render himself liable for these goods, if 'bills of lading are signed therefor with the value therein expressed, and a special agreement is made.' "

See, also, The New England (D. C.) 110 Fed. 415, 419.

So it has been contended that, while a carrier may not stipulate for its absolute release from liability for negligence, it may limit its liability

to a certain sum in case of loss. But the weight of authority in this country is undoubtedly to the effect that the same principles of public policy which condemn total exemptions condemn such partial exemptions, and that such limitations, as distinguished from agreed valuations, are invalid. See Hutchinson on Carriers, § 250.

It is upon the theory of an agreed valuation that the majority of the court decide this case. It is said that the parties agreed that the valuation of property obviously worth about $15,000 was $50, and consequently that no more was recoverable, although the property was destroyed by the defendant's negligence.

Unquestionably the law makes a distinction between agreed valuations and mere limitations, and sustains the former. When shipper and carrier make a fair valuation of property offered for transportation with a rate of freight based thereon, a contract releasing the carrier from liability beyond the agreed amount will be sustained. Such agreements permit an adjustment of rate to liability and protect the carrier from fanciful and extravagant valuations. In the case of articles of doubtful or uncertain value, every presumption should be in favor of the valuation agreed upon. But the principle should not, in my opinion, be extended further. It is only because such agreements present a meeting of the minds of the parties as to the fair value of the property, as distinguished from an arbitrary limitation of liability, that they escape condemnation by those considerations of public policy which we have noticed. I cannot concur in holding that a fictitious valuation, known by both parties to have no relation whatever to the real value of the property, is within the governing principle. In my opinion a valuation of $50 upon $15,000 worth of property—of known value to both carrier and shipper—is not a valuation at all, but is an arbitrary and unreasonable limitation in the guise of a valuation. If $50 can be sustained as a valuation of this property, any sum may be named as the value of any property. While public policy declares that agreements which relieve a carrier from the effects of its negligence "are contrary to the fundamental principles upon which the law of carriers was established," nevertheless such exemption may be obtained by going through a form of words—by "valuing" the most valuable article at a penny!

Moreover, the opinion of the majority not only says that the "valuation" in this case escapes the condemnation of principles of public policy, but goes further, and states that it would be in the highest degree violative of those principles to permit a shipper to recover the full value of his property in the face of such a "valuation." But precisely the same thing could be said in the case of a shipper who enters into an agreement with a carrier, in consideration of a reduced rate of freight, to release the carrier from all liability for negligence. It has never been held inimical to public policy to permit a shipper to repudiate such an agreement although deliberately entered into for value. On the contrary, as we have seen, public policy requires such repudiation. The controlling consideration is not one of private right, but of public interest.

The decision of the majority is based upon the opinion of the Supreme Court in Hart v. Pennsylvania Railroad Co., 112 U. S. 331, 5

Sup. Ct. 151, 28 L. Ed. 717, the gist of which, as I view it, is contained in the following paragraph:

"The distinct ground of our decision in the case at bar is that where a contract of the kind signed by the shipper is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by negligence of the carrier, the contract will be upheld as a proper and lawful method of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations."

As I construe this language, it states the rule already noted: That a fair valuation—a valuation "fairly made"—between shipper and carrier will be sustained. While the language of some parts of the opinion is broad, I find nothing to indicate an intention upon the part of the Supreme Court to depart from those principles governing carriers which it had previously consistently maintained. There was not in the Hart Case a fictitious "valuation"—an arbitrary sum having no relation whatever to the real value of the property. The valuation in the receipt of $200 was undoubtedly a fair average valuation of a horse, and race horses which, probably more than any other class of property, are susceptible of "extravagant and fanciful valuations," were shipped under it. The Supreme Court apparently held the valuation bona fide and sustained it for that reason. If the amount stated in the present receipt had been a fair average valuation of an automobile—say $1,000—and these machines, although of greater value, had been shipped under it, there would be far more ground for contending that the decision in the Hart Case is applicable here. In view of the facts, the decision in that case seems not inconsistent with the views already expressed. [1]

For these reasons I am constrained to dissent in this case. I do so with diffidence and reluctance. The majority opinion is able, and I appreciate that it is in accordance with the trend of the decisions in this court. But, if the principles of public policy which condemn agreements whereby carriers seek to put off their obligations to the public and exempt themselves from the consequences of their negligence means anything of substance, I strongly feel that they should be given an application broad enough to accomplish something. It would be better, as it seems to me, to hold that carrier and shipper may enter into such agreements as they see fit than to deny the right to make a direct contract and permit the same result to be accomplished by indirection. It would be better to deny the existence of considerations of public policy than to insist that they are sound and while still insisting expressly approve an obvious and deliberate evasion of them.

In my opinion there was error in the judgment of the Circuit Court.

[1] The decision of this court in Hohl v. Norddeutscher Lloyd, 175 Fed. 544, 99 C. C. A. 166, is in my opinion distinguishable from the present case, in that there the value of the property was concealed. The shipment was a closed package containing hosiery. In the present case the value of the automobiles was well known.