### DUPLAN SILK CO. v. LEHIGH VALLEY R. CO.

(Circuit Court of Appeals, Second Circuit. March 9, 1915.)

#### No. 183.

CARRIERS ☞158—LIABILITY FOR DAMAGE TO GOODS—CONSTRUCTION OF BILL OF LADING.

A bill of lading for a shipment of raw silk provided that "the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property, * * * unless a lower value has been represented in writing by the shipper or has been agreed upon, * * * in any of which events such lower value shall be the maximum amount to govern such computation." The following clause was stamped on the face of the bill: "Liability limited to one dollar per pound. The consignor of this property has the option of shipping same at a higher rate without limitation as to value in case of loss or damage from causes which would make the carrier liable, but agrees to the specified valuation named in case of loss or damage * * * because of the lower rate thereby accorded for transportation." The silk was damaged from a cause which rendered the carrier liable. Held, that such provisions were consistent and should be construed together; that the specified sum of $1 per pound was not a limitation of the carrier's liability, but an agreed conventional valuation, which under such provisions was to be taken as the real value of the goods for the purpose of computing the amount of the carrier's liability; and that the measure of such liability was the difference between the damaged value of the goods and their value at $1 per pound.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 663–667, 699–703½, 708–710, 718, 718½; Dec. Dig. ☞158.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York dismissing the libel.

The suit was brought to recover damages to 21 cases of raw silk, total weight of silk 3,319 pounds, shipped on a car of defendant's railroad, which was knocked overboard in a collision due to causes for which defendant was liable. The sound market value of the goods was $6,273.20; after disaster they were sold for $2,831.39. The respondent has paid and libelant accepted $3,319

(and interest), which is $1 per pound, without prejudice to the further rights of either party. Respondent claims that nothing more is due. Libelant claims to be entitled to a further payment of $1,333.36. This is calculated as follows:

| | | |
|---|---:|---:|
| Sound market value | | $6,273 20 |
| Net proceeds | | 2,831 39 |
| | | $3,441 81 |
| Percentage of loss | | 54.865% |
| That percentage of bill of lading value is | | 1,820 97 |
| Amount paid by carrier | $3,319 00 | |
| Including proceeds | 2,831 39 | |
| Leaves payment on account of damage only | 487 61 | 487 61 |
| Balance claimed | | $1,333 36 |

The following is the opinion of Hough, District Judge, in the court below :

Certain silk belonging to libelant was in charge of respondent. It fell overboard from a lighter under circumstances producing admitted liability. It was on board of the lighter under and by virtue of a bill of lading containing the following proviso stamped on the face of the bill: "Liability Limited to One Dollar per Pound. The consignor of this property has the option of shipping same at a higher rate without limitation as to value in case of loss or damage from causes which would make the carrier liable, but agrees to the specified valuation named in case of loss or damage from causes which would make the carrier liable, because of the lower rate thereby accorded for transportation."

The printed portion of the bill contained another and entirely different style of limitation. In my judgment it was entirely superseded by the stamped clause and is not to be considered or regarded in this case. It is further admitted that the provision above quoted was incorporated in the bill of lading in consonance with a classification and tariff rate filed with the Interstate Commerce Commission pursuant to law, and that under the provisions of said classification the shipper or consignor, by accepting the stamped clause on his bill of lading, obtained a freight rate only one-third as great as it would have been (in the language of the classification and tariff) "when consignor's valuation is not expressed or when expressed exceeding one dollar per pound." At $1 a pound the injured silk amounted to $3,319. Its actual market value was $6,273.20. In its damaged condition it sold for $2,831.39. Therefore the actual loss by disaster was $3,441.81. The carrier is willing to pay the difference between the proceeds of the injured silk and $3,319; whereas libelant demands the same proportion of the "bill of lading value" as its actual loss bears to the sound market value.

It is obvious that a short and accurate description of libelant's claim is this: Where a partial loss occurs on goods covered by a bill of lading valuation, damages are to be settled for just as if the bill of lading were a valued insurance policy. This may be, and I think is, a very good way of settling damage claims, provided it is understood and agreed upon before contract made. But this and other similar contracts are presumed to have been made in contemplation of the law as it existed at the time of contract formation.

It is a hopeless task to reconcile decisions from all over the United States relating to limitations of carrier's liability by contract or notice. The maritime bill of lading with which the admiralty bar was entirely familiar a few years ago was usually a document offensive to one's sense of justice, especially in that it attempted to arbitrarily limit cargo owners' recoveries, without granting for the limitation any quid pro quo. The rate of freight was uniform; the shipper could take the bill of lading or take away his goods; nor did the bill itself or the ordinary freight contract offer him any opportunity of getting additional security by paying a little more freight. Of course, the bills of lading commonly in use among land carriers were open to much the

same criticism; but competition offered a partial remedy, rarely afforded to those who wished to send goods on ocean voyages.

The just method of escape from the situation in which shippers found themselves was approved in Hart v. Pennsylvania Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, some 30 years ago. The method is simple enough. The shipper who wishes to pay a full rate declares, and the carrier accepts, the full value of his goods. If he wishes to take advantage of a cheap rate, there is substituted a conventional or contractual value, the result of an agreement between both parties to the contract; and when this agreement is reached both parties are to be held to the contract they have made. When shipments are made on conventional values, the difference between such value and the real value is covered by insurance, presumably for the reason that insurance rates are lower than freight rates, though, of course, also, the insurer's liability is usually wider than is that of the carrier.

Since the doctrine of valued shipments has become well known, and its justice usually accepted, there is one inquiry (easy to make, but not always easy to answer) that should be directed to every bill of lading containing a limitation clause, viz.: Is the clause in question a mere limit upon the extent of carrier's liability, or a conventional valuation to be used as the basis for fixing damages? If the clause amounts to no more than a limit of liability, then the simplest method of interpretation is to find out the shipper's damage, just as though there was no limitation clause, and make him pay up to the limit fixed. This is the method of Holmes, J., in Brown v. Cunard S. S. Co., 147 Mass. 60, 16 N. E. 717, and distinctly approved in this circuit in The Styria, 101 Fed. 735, 41 C. C. A. 639.

Putting the inquiry above stated in this case, it has been agreed by counsel that the clause in question here is not a mere limitation clause, but is a conventional valuation. After considering the whole clause, the reason for it, and the favorable terms of shipment accorded in consideration of the contract evidenced by said clause, I agree with counsel, and hold that it was the intention of the parties, by giving and accepting this bill of lading, to treat the libelant's silk as worth no more than $1 a pound, in exactly the same way and for the same reasons as horses were valued at $200 apiece (although worth much more) in the Hart Case, supra. Thus the question here becomes merely one of the manner of assessing damages. It is undoubtedly true that libelant's method has been followed in Indiana. United States Express Co. v. Joyce, 72 N. E. 865. And this method of adjustment has been looked on with favor by Mr. Hutchinson in his work on Carriers (section 429).

It is true that by this method of computation the carrier can never be made to pay more than the conventional or agreed value of the goods; but it is also true that the shipper may, and in cases of partial loss often will, get more than the agreed value of his goods. I cannot see that there is any moral principle involved in either method of computation; the question is: What contract was made? In my judgment the United States courts have held that, when a valid, fair valuation contract has been made, the articles shipped "have no greater value, for the purposes of the contract of transportation, between the parties to that contract; * * * the shipper is estopped from saying that the value is greater." Hart v. Pennsylvania Railroad Co., 112 U. S. at page 341, 5 Sup. Ct. at page 156, 28 L. Ed. 717. This is a simple and fair rule, and if the shipper cannot even refer to any greater value than the conventional value, then, of course, there is no basis for the sort of computation sought to be made by the libelant herein.

Exactly the same method of interpretation has been adopted in this circuit in The Oneida, 128 Fed. 687, 692, 63 C. C. A. 239, 244, where a valuation clause not so plain in language, and (to my personal knowledge) not based on such an obvious consideration as is here present, was interpreted to mean "either that the damage recoverable shall not exceed the cost or value of the goods at the time and place of shipment, or, alternatively, that as a basis for computing the damages their cost or value at the place of shipment is to be substituted for their market value at the place of destination." It was held to be a conventional substitution of the former value for the latter; the shippers were estopped from using or claiming the higher value, which was the real value.

The result must be the same here. The respondent carrier has turned over to the shipper the proceeds of the goods in their damaged condition, and enough more to make up the full limit of the conventional value of the shipment. Under the rule of the Supreme Court and the rule followed in The Oneida, no other value can be mentioned, used, or referred to, because that is the value the parties agree should prevail throughout all their relations with each other.

Any rule on this subject is artificial. It can never represent more than an approximation to abstract justice, but upon the whole it seems to me better that, when upon a fair consideration a conventional value has been agreed upon, the result should be that not only can the carrier never be made to pay more than the agreed value, but the shipper can never get more than that same value. The difference he ought to cover by insurance, as he almost invariably does. It is confirmatory of this view that actions of this kind are usually promoted by insurance companies (subrogated to shipper's rights), who are trying to get back from the carrier the loss which the shipper paid them to shoulder.

The libel is dismissed.

Kneeland, Harison & Hewitt, of New York City (W. Harrison, of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (D. R. Englar, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. Examination of the claim shows that it is based on the theory that the rule to be applied in calculating loss is the same as would be applied when computing a particular average loss under a policy of marine insurance. But this is not an insurance case; it is a case of carriage under a bill of lading. The question presented is: What is the meaning of two clauses in the bill of lading, both lawfully included in the bill. The first clause is printed in the body of the bill; it reads as follows:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

The other clause is stamped on the bill of lading; it reads:

"Liability limited to one dollar per pound. The consignor of this property has the option of shipping same at a higher rate without limitation as to value in case of loss or damage from causes which would make the carrier liable, but agrees to the specified valuation named in case of loss or damage from causes which would make the carrier liable, because of the lower rate thereby accorded for transportation."

The "specified value" or the "value represented in writing by the shipper" in this case was $1 per pound. So far as any question here presented is concerned, we find no substantial difference between the ideas expressed by the two clauses, in which respect we differ apparently from the District Judge.

When the valuation fixed in a bill of lading is intended to limit the extent of the carrier's liability, damages are to be ascertained in the

usual way, and the carrier pays them up to that amount. The Styria, 101 Fed. 735, 41 C. C. A. 639; Bradley v. Lehigh Valley R. R., 153 Fed. 350, 82 C. C. A. 426. When, however, the valuation fixed is intended to express the agreed value of the goods, the carrier will be liable for the difference only between the damaged value and the agreed value. Hart v. Penn. R. R., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; Bachman v. Clyde S. S. Co., 152 Fed. 403, 81 C. C. A. 529; Hohl v. Norddeutscher, Lloyd, 175 Fed. 544, 99 C. C. A. 166; Pierce v. Wells Fargo Co., 189 Fed. 561, 110 C. C. A. 645. As in all other controversies arising upon written contracts, the fundamental question is: What does the contract provide? That the method of calculation provided may not be as equitable as the method of calculation provided under some other contracts—e. g., under policies of marine insurance—is not important, the question is whether the parties have agreed on that method.

The printed clause provides that the loss or damage shall be *computed* on the *basis* of the *real value* of the property, *unless* a lower one has been agreed upon, in which event such lower value shall be the "maximum amount to *govern such computation*." This, as we read it, means that, when computations are being made, the maximum value placed on the goods shall be the agreed value. The stamped clause provides for making a conventional valuation of the property, and, when such conventional valuation is made, "the shipper agrees to the specified valuation named in case of loss or damage." This, as we read it, means that, when loss or damage is being computed, the valuation of the goods shall be *not the real value*, but the *specified value*.

Libelant's counsel in his brief puts the question:

"Would any business man, when valuing goods at the time of shipment, ever suppose that he was valuing them, not in their condition at that time, but in a subsequent damaged condition?"

We should say that, if he read the clauses, he would suppose that he was agreeing that whenever, damage having occurred, he was computing the amount he should recover from the carrier, his goods, no matter what their real value might be, were to be treated as worth at the time of shipment only the stipulated value.

Decree affirmed, with costs of appeal.