E. LOONEY, Appellee, *vs.* THE OREGON SHORT LINE RAIL-ROAD COMPANY, Appellant.—LESTER C. SEAWELL, Appellee, *vs.* THE OREGON SHORT LINE RAILROAD COMPANY, Appellant.

*Opinion filed February 16, 1916.*

1. CARRIERS—*purpose of Carmack amendment to Hepburn act.* The purpose of the Carmack amendment to the Hepburn act was to do away with the difficulties shippers had encountered in seeking to recover damages to property carried over more than one line of railroad, by giving the shipper the right to institute his action against the carrier receiving the property for inter-State shipment for damages occurring anywhere in the course of the transportation, leaving it to such carrier to recover from the carrier on whose line the damage occurred.

2. SAME—*shipper must sue carrier first receiving property for inter-State transportation.* The carrier which first receives property for inter-State transportation and gives a bill of lading therefor is the one which the shipper must sue for damages occurring anywhere in the course of the transportation, notwithstanding the original bill of lading is given up and a new one issued by the connecting carrier when the shipment reaches its line, which procedure is followed by every subsequent connecting carrier.

3. SAME—*Carmack amendment does not contemplate that connecting carriers shall issue bills of lading.* The requirement of the Carmack amendment that the carrier receiving property for continuous inter-State transportation shall issue a receipt or bill of lading is confined to the first or initial carrier, and as there is no

requirement that any connecting carrier shall issue a receipt or bill of lading it is evidently contemplated by the act that the liability shall attach to the first carrier, only, thus combining unity of responsibility with continuity of transportation.

APPEAL from the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding.

JOHN A. SHEEAN, for appellant.

CHARLES A. BUTLER, (FRANKLIN RABER, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellees, E. Looney and Lester C. Seawell, brought separate suits in the municipal court of Chicago against the appellant, the Oregon Short Line Railroad Company, for damages alleged to have resulted from the negligent transportation of their respective shipments of sheep from Weiser, Idaho, to Chicago. A judgment against the appellant was rendered in the municipal court in each case, and on appeal to the Appellate Court for the First District, the facts and questions of law being identical, the appeals were heard together. The judgments were affirmed and certificates of importance granted and further appeals prosecuted to this court, where the appeals have been consolidated.

The statement of claim in each case charged the defendant with liability under the Carmack amendment to the Hepburn act of June 29, 1906, for damages incurred on the various lines of railroad between Weiser and Chicago. The defense set up by the amended affidavit of merits was that the shipments did not originate at Weiser, Idaho, but had their origin at Evergreen, Idaho, upon the line of the Pacific and Idaho Northern Railway Company, which issued

its contracts or bills of lading as the initial carrier of the sheep and thereby became the sole and only carrier liable under the Carmack amendment for damages to the sheep on the connecting lines.

On September 12, 1910, the Pacific and Idaho Northern Railway Company received at its station at Evergreen, Idaho, from E. Looney 3905 lambs loaded in twelve cars, and from Lester C. Seawell 2447 lambs and 143 yearling wethers loaded in eight cars, for transportation to Chicago, Illinois, and gave to each of the shippers a contract and bill of lading in the form of the regular limited-liability live stock contract in common use by the railroad companies, purporting to limit its liability to its own line. The twelve cars of sheep of E. Looney were consigned by the bill of lading to Eugene Looney & Co. of Chicago and the eight cars of sheep of Seawell were consigned to himself at Chicago. The sheep were carried in the same cars and the same trains on the different roads from Evergreen station to their destination. They arrived at Weiser, Idaho, on the line of the defendant, the Oregon Short Line Railroad Company, on September 13, 1910, and that company issued bills of lading of the same character as the previous ones and consigned as above. The bills of lading issued by the Pacific and Idaho Northern Railway Company were surrendered. The sheep were carried over the defendant's road to its terminus at Granger, Wyoming, where they were delivered to the Union Pacific Railroad Company, and that company conveyed them to Fremont, Nebraska, and delivered them to the Chicago and Northwestern Railway Company, by which they were transported to Rochelle, Illinois. When the sheep were delivered to the Chicago and Northwestern Railway Company at Fremont, Nebraska, it issued like bills of lading as the defendant and the bills of lading issued by the defendant were surrendered. When the sheep were unloaded at Rochelle for rest, water and feed, the Looney sheep were sold at private sale and the

Seawell sheep were again loaded and sent to Chicago, where they were sold on the public market. The evidence of negligence related to alleged improper handling at the various stopping places for feed, water and rest, and the claim was that the places were unfit for that purpose.

The municipal court by an oral charge to the jury advised them that the defendant was liable for any negligent transportation and management of the shipments in the course of transportation from Weiser, Idaho, to Rochelle, Illinois, and refused to hold or to instruct the jury that the Pacific and Idaho Northern Railway Company was the carrier made liable by the Carmack amendment and that the defendant was not so liable. The view taken by the Appellate Court was that it was immaterial whether the defendant was the initial or first carrier which received the goods for shipment, for the reason that the defendant gave bills of lading at Weiser when it received the sheep and the bills of lading previously given by the Pacific and Idaho Northern Railway Company were surrendered. The conclusion was that the defendant made itself liable, although only a connecting carrier, by issuing the second bills of lading.

In this court counsel for the appellees present two propositions of law: First, that it is immaterial, under the Carmack amendent, whether the defendant be the initial carrier or not, the liability imposed thereby being upon any carrier receiving goods for transportation from a point in one State to a point in another State; second, because, even though the Carmack amendent be construed as affording a remedy against the initial carrier only, yet under the facts in these cases the defendant might be held to be the initial carrier.

It has frequently been explained by the courts that the purpose of the Carmack amendment was to do away with the difficulties shippers had encountered in seeking to recover against carriers for damages to property carried over more than one line of railroad. The obstacles met by a

shipper in attempting to locate responsibility for damages to property shipped over different lines of railroad were almost insuperable, and frequently the shipment, as in this case, was not only over several lines, but for long distances and in several different States. To afford a remedy for such a condition Congress gave the shipper the right to institute an action against the carrier receiving his property for an inter-State shipment and to recover damages occurring anywhere in the course of the transportation, leaving it to the carrier receiving the property to recover from the carrier on whose line or lines the damage or injury occurred. The character of the shipment in this case as being for inter-State transportation within the terms of the Carmack amendment was fixed at Evergreen by the bills of lading and as a matter of fact, and the Pacific and Idaho Northern Railway Company became liable for any damage or injury to the sheep that might occur through negligence on the part of any connecting carrier. That company came precisely within the terms of the amendment, which makes any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State liable for any loss, damage or injury to such property caused by it or by any other common carrier, railroad or transportation company to which the property may be delivered or over whose line or lines the property may pass. It was at Evergreen and with the Pacific and Idaho Northern Railway Company that the shippers contracted for a through carriage of their sheep to the point of destination at Chicago, but when in the course of transportation the sheep reached Weiser the defendant gave its bills of lading for the shipments, and it is insisted that it thereby took the place of the carrier receiving the sheep for the inter-State shipment. If that were so, instead of localizing and fixing a single responsibility for inter-State shipment, every carrier that saw fit to issue bills of lading such as were issued in this case, in terms ex-

pressly limiting its liability for a portion of the continuous shipment to its own line, would assume responsibility for the negligence of other connecting carriers, which would not be in harmony with the purpose of the amendment. The amendment does not use the term "initial carrier" nor "primary carrier," but the words employed refer to the initial carrier by designating such carrier as the one receiving property for an inter-State shipment. The carrier made liable by the amendment has been treated by the courts continually as the initial or first carrier receiving the goods, and the purpose of the amendment has been declared to be to combine unity of responsibility with continuity of transportation. (*Atlantic Coast Line Railroad Co.* v. *Riverside Mills,* 219 U. S. 185; *Adams Express Co.* v. *Croninger,* 226 id. 491; *Aton Piano Co.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 139 N. W. Rep. [Wis.] 743.) The requirement that the carrier receiving property for a continuous inter-State shipment shall issue a receipt or bill of lading is confined to the initial carrier, and as there is no requirement that any connecting carrier shall issue a receipt or bill of lading it was evidently contemplated that the liability should attach to the first carrier only. In the case of *Hudson* v. *Chicago, St. Paul, Minneapolis and Omaha Railway Co.* 226 Fed. Rep. 38, the court held that the liability attached only to the first carrier receiving property and was unable to assent to the conclusion reached by the Appellate Court in this case. We regard the reasoning of the court in that case as convincing. Any other doctrine would substitute diversity for unity, and instead of making liability depend upon the law would base it upon the independent, separate acts of connecting carriers.

The judgments of the Appellate Court and municipal court are reversed and the cause is remanded to the municipal court.               *Reversed and remanded.*