### Farmers' Grain Company of Dorans, Appellant, v. Illinois Central Railroad Company, Appellee.

1. CARRIERS, § 30*—*when laws governing interstate commerce control.* When a contract is made for the transportation of goods from a point in one State to a point in another State, and the goods are loaded and started for their destination, the laws governing interstate commerce control, whether the goods ever leave the State or not.

2. CARRIERS, § 30*—*what is object of Carmack Amendment to Interstate Commerce Act.* The object of the Carmack Amendment to the Interstate Commerce Act was to help and not to hinder interstate shippers in recovering for losses of goods while in transit, and it should be construed in the light of such purpose.

3. CARRIERS, § 138*—*when evidence admissible to show who lawful holder of bill of lading.* While the presumption is that one in possession of a bill of lading is the lawful holder thereof, it may be shown by competent evidence that another is in fact the lawful holder so as to entitle him to bring an action under the Carmack Amendment of the Interstate Commerce Act for loss to goods during transit.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Farmers' Grain Co. v. Illinois Central R. · Co., 201 Ill. App. 261.

4. CARRIERS, § 58*—*when shipper remains owner of goods.* In an action by a shipper under the Carmack Amendment of the Interstate Commerce Act, for loss of goods during transit, where bills of lading were delivered to the drawees of sight drafts attached thereto, with the stipulation that the goods were to be delivered to them only on payment of such drafts, *held* that the shipper still remained the owner of the goods so as to entitle him to maintain the action.

5. CONFLICT OF LAWS, § 33*—*when law of forum governs.* In regard to the introduction of evidence, courts are governed by the laws of the forum.

6. CARRIERS, § 138*—*when affidavit of weighers admissible.* In order that an affidavit of one having personal knowledge of the weight of a shipment delivered to a consignee by common carriers may be admissible in evidence, under Hurd's Rev. St. ch. 114, par. 118, sec. 1 (J. & A. ¶ 8920), it is not necessary that the affidavit state that the affiant comes within the class named in the statute, but such evidence may be shown by other competent proof.

7. CARRIERS, § 138*—*when affidavits of weighers admissible.* Where grain is sold subject to the weight taken by weighers of a board of trade at its destination and is delivered by the carrier without being weighed, affidavits of such weighers as to the amount delivered are competent evidence in an action by the shipper for loss of shipment.

8. TRIAL, § 74*—*when proof of value of lost property may be introduced.* In an action against a carrier for the loss of a part of a shipment, proof of the value of the part lost may be introduced either before or after proof of the amount lost.

9. WITNESSES, § 194*—*when evidence of witness refreshing memory from book admissible.* In an action for loss of a shipment of grain, evidence of the plaintiff, who had made prior sales at the point of destination of the shipment in question and had made notations thereof in a book kept by him for that purpose, as to what the prices were at such point, as his memory was refreshed by the book, *held* admissible after proof that the entries in the book were correct.

Appeal from the City Court of Mattoon; the Hon. JOHN McNUTT, Judge, presiding. Heard in this court at the October term, 1915. Reversed and remanded. Opinion filed April 21, 1916. Rehearing denied June 30, 1916.

BRYAN H. TIVNEN, for appellant.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

EDWARD C. CRAIG, DONALD B. CRAIG and JAMES W. CRAIG, JR., for appellee; JOHN G. DRENNAN, of counsel.

MR. JUSTICE GRAVES delivered the opinion of the court.

Appellant brought suit in the City Court of Mattoon to recover of appellee, as a common carrier of grain, for losses claimed to have been sustained by appellant by reason of the failure of appellee to deliver at the destination points, parts of some eighty-nine different shipments made by appellant from Dorans, Illinois. The declaration contained a separate count for each shipment. Before the case was submitted to a jury all of these counts except eighteen had been eliminated. The plea of defendant was the general issue. At the close of appellant's case, the jury by the peremptory instructions of the court returned a verdict finding appellee (defendant in the court below) not guilty.

It is not denied that appellee is liable to some one for any grain that was lost in transit, at its fair cash market value. Neither is it denied that appellant was the consignor in all the shipments in question, and that a bill of lading was duly issued to it on each of such shipments. It is, however, contended by appellee that all of the eighteen shipments except one were interstate shipments and governed by the provisions of the Carmack Amendment to the Interstate Commerce Act; that as to all of such shipments, whether interstate or intrastate, the evidence shows that appellant was not the owner of the grain or the lawful holder of the bill of lading when the loss, if any, occurred, and that in any event there is no proper evidence in the record to show either that there was a loss of grain in transit or what the market value of it was, either at Dorans, when it was received for shipment by appellee, or at the different points where the same should have been delivered.

The evidence shows that in seventeen of the eighteen

shipments in question the destination of the grain was beyond the limits of the State of Illinois. Even if it be true, as is claimed by appellant, that some of these shipments were stopped and unloaded in Chicago, we think they must all be held to be interstate shipments, because when a contract is made for the transportation of goods from a point in one State to a point in another State, and the goods are loaded and are started for their destination, the laws governing interstate commerce control, whether the goods ever leave the State or not. *United States v. Colorado & N. W. R. Co.,* 85 C. C. A. 27, 157 Fed. 321; *Atlantic Coast Line R. Co. v. Riverside Mills,* 219 U. S. 194.

On the question of who was the owner of the grain while in transit, appellee claims that the course pursued constituted a sale and transfer of the title to the grain at the point of shipment.

The evidence, however, does not bear out all that appellee claims for it. It does show that immediately upon receiving the bills of lading sight drafts were drawn by appellant on different persons at the point of destination of the various shipments, and that the bills of lading were delivered to the same persons on whom the sight drafts were drawn, but it further shows that such sight drafts were not drawn for the whole amount of grain shipped, but for only about ninety per cent. of it; that the amounts so obtained were treated as loans or advancements, and drew interest until the deal was closed after the grain reached its destination; that as between the drawer and the drawee of the sight drafts, it was understood and intended that the title of the grain should not pass until it was weighed at the destination and was found to be of the grade specified, and that only so much of the grain shipped as reached its destination and graded up should be accepted and paid for. The evidence further shows that appellant in fact never did receive pay for any of the grain involved in the shipments in ques-

tion except that which reached its destination and graded up. The parties to those transactions had a right to make such a contract. If that was the contract then appellant was the owner of the grain while in transit, and unless there is something in the Carmack Amendment, when applied to the facts in this case, to prevent it, appellant was entitled to maintain an action to recover for so much, if any, of the grain as was lost in transit.

The part of the Carmack Amendment relied on is as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and *shall be liable to the lawful holder thereof for any loss,* damage or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed: PROVIDED, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

Appellee contends that after appellant delivered to the drawees of the sight drafts the bills of lading it was no longer the lawful holder of them, and was prohibited by this amendment from recovering for any loss of or injury to such property while in transit.

The object of that amendment was to help and not to hinder interstate shippers in recovering for losses of goods while in transit, and it should be construed in the light of such purpose. *Looney v. Oregon Short Line R. Co.,* 271 Ill. 538.

While by this amendment the right to recover for loss of goods in transit in interstate shipments is given and limited to the lawful holder of the bill of lading,

and while the possession of the bill of lading, even by assignment or mere delivery, raises the presumption that the one in possession is the lawful holder, it is not conclusive and is always subject to be overcome by a showing that he is not. The mere possession of a bill of lading may be in one person, while the lawful holder of it may be an entirely different one. Whether the one in possession of it is the lawful holder depends upon the intent of the parties in giving and acquiring such possession, and what that intent was may be shown by any competent proof. Mr. Justice Duncan, now of the Supreme Court, gives emphasis to the effect of the intent with which an assignment or delivery of possession of a bill of lading is made as bearing on the question of whether the possessor of it is the lawful holder in *Idaho Sheep Co. v. Oregon Short Line R. Co.*, 188 Ill. App. 591. On page 596 of that opinion he says:

*"The right of action is in positive terms of said amendment given to the lawful holder of the receipt or bill of lading, and it requires the carrier to issue the same.* These provisions are sound and simple and need little or no explanation. The owner of the bill of lading was regarded in law as an owner of the goods or the thing shipped before the Carmack Amendment was ever enacted. The lawful *holder* of the *bill of lading,* even by assignment or by mere delivery thereof *with intent to transfer the goods, has at all times been regarded as having* the right to the possession of the goods shipped, and *property rights therein according to the intent of the parties to the assignment or delivery,* and could maintain an action for the possession of the same. *Delivery* of a bill of lading *with intent to transfer the property in the goods* is a symbolical delivery of the goods and passes a valid title thereto."

In *"The Carlos F. Roses,"* 177 U. S. 665, 671, 44 L. Ed. 933, 935, the court says:

"Bills of lading stand as the substitute and repre-

sentative of the goods described therein, and, while quasi-negotiable instruments, are not negotiable in the full sense in which that term is applied to bills and notes. The transfer of the bill passes to the transferee the transferrer's title to the goods described, and the *presumption* as to ownership arising from the bill *may be explained or rebutted by other evidence* showing where the real ownership lies. A pledgee to whom a bill of lading is given as security gets the legal title to the goods and the right of possession only *if such is the intention of the parties, and that intention is open to explanation.* Inquiry into the transaction in which the bill originated is not precluded because it came into the hands of persons who may have innocently paid value for it. * * * Even if bills of lading are delivered, that circumstance will not be sufficient, unless accompanied with an understanding that he who holds the bill of lading is to bear the risk of the goods as to the voyage, * * * it cannot be held to work any change in the property.''

See also, *Ensign v. Illinois Cent. R. Co.,* 180 Ill. App. 382, 383.

In *Pecos & N. T. Ry. Co. v. Meyer* (Tex. Civ. App.) 155 S. W. 309, the court defines the term "lawful holder" to mean the one beneficially entitled to recover for loss or injury, and says the manual possession is not prerequisite to the right to sue.

The bills of lading in evidence in this case contained a stipulation or rule that the same should be surrendered before the grain would be delivered. We think the evidence in this record fairly tends to show that the delivery of them to the drawees of the sight drafts was not intended as a transfer of the ownership of the grain, but was merely intended to place such drawees in a position where they could comply with the stipulation or rule referred to and thereby obtain possession of the grain, weigh it, grade it, and if it was up to grade, close the deal.

268     APPELLATE COURTS OF ILLINOIS.

Farmers' Grain Co. v. Illinois Central R. Co., 201 Ill. App. 261.

If the title to the grain remained in appellant until it reached the point of destination and graded up and was accepted by the drawees of the sight drafts as their property, then of course no one but appellant could recover for loss or injury to the same while in transit. That being true, appellant, under the principle announced in the *Pecos* case, *supra*, would be the *lawful holder* of the bills of lading, while the grain was in transit whether it had them in its manual possession or not. The fact that appellant sold to others all the grain that finally reached its destination, and the further fact that bills of lading were delivered to such purchasers and were in turn delivered by them to appellee in exchange for the grain, cannot be held to defeat appellant's right to recover for the grain that never reached its destination.

What has been said as to the ownership of the grain, and the effect of the delivery to the buyer of the bill of lading, applies with equal force to the intrastate shipment.

Appellant offered in evidence three affidavits of persons who weighed separate shipments of grain at their destination for the purpose of showing that all the grain shipped was not delivered. Objections made to these affidavits were sustained. The statute under which they were offered is paragraph 118, sec. 1, ch. 114, Hurd's Revised Statutes (J. & A. ¶ 8920):

"Evidence — Shortage. If any such corporation shall, upon the receipt by it of any grain for transportation, neglect or refuse to weigh and receipt for the same, as aforesaid, the sworn statement of the shipper, or his agent having personal knowledge of the amount of grain shipped, shall be taken as true, as to the amount so shipped; and in case of the neglect or refusal of any such corporation, upon the delivery by them of any grain, to weigh the same, as aforesaid, *the sworn statement of the person to whom the same was delivered, or his agent having personal knowledge*

*of the weight thereof, shall be taken as true, as to the amount delivered.* And if, by such statements, it shall appear that such corporation has failed to deliver the amount so shown to be shipped, such corporation shall be liable for the shortage, and shall pay to the person entitled thereto the full market value of such shortage, at the time and place when and where the same should have been delivered.''

Appellee insists there was no error in refusing to admit these affidavits in evidence for several reasons: First, that they were not made by the person receiving the grain or by an agent of such person having a knowledge thereof; second, because they did not show on their face that they were made by the person named in the statute quoted; third, that appellant was not the proper person to bring the suit and therefore it was immaterial to this suit what the grain weighed at the point of destination; fourth, that there was no proof in the record as to the value of the grain claimed to have been lost and therefore the amount of it was immaterial.

In regard to the introduction of evidence, courts are governed by the laws of the forum. The statute above referred to is a rule of evidence and provides that the sworn statement of the person to whom goods are delivered, or his agent having personal knowledge of the facts, shall be taken as true as to the amount delivered. The statute does not require that proof of whom the person is who makes the affidavit and what his relation is to the person who received the goods shall be contained in the affidavit. In the absence of such statutory requirement it is clearly competent to prove such facts by other evidence. The statute referred to being a rule of evidence only, does not and cannot tend to increase or decrease liability, and therefore applies to all shipments whether interstate or intrastate.

There is proof in the record tending to show that the railroads did not weigh the grain at its destination;

270 ˉAppellate Courts of Illinois.

Farmers' Grain Co. v. Illinois Central R. Co., 201 Ill. App. 261.

that the grain in these shipments was sold subject to the weights taken by the weighers of the various boards of trade and exchanges at the various places where the grain was delivered. If that is true, then such weighers were by such arrangements constituted the agents of all persons concerned, for the purpose of weighing the grain, and their affidavits were competent evidence under the statute referred to.

The point made that as there was no proof of the value of the grain, therefore proof of the amount lost was immaterial, has no force. There is no hard and fast rule governing the order of the introduction of such proof. It is entirely competent to introduce first either proof of the amount of property lost and then of its value, or first proof of its value and then the amount lost.

Appellant offered proof as to what the market value of grain was at the point of destination of some or all of these shipments, but on objection it was excluded. The witness was not a resident of these several places, but he had sold grain on the market at all of such places and had kept a record of the same in a book kept for that purpose. Appellant offered to prove that these books were correct and that the witness by refreshing his mind by reference to them was able to tell what the fair cash market value of the grains in question was at the time and place in question. We think the evidence was competent. Of course its weight was a matter for the jury to determine.

For the errors pointed out the judgment is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*